UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY VINCENT BRADLEY,

   Plaintiff,

Case No. 1:09-cv-1070

Hon. Robert J. Jonker

v.

RICHARD HALLSWORTH, *et al.*,

   Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions for summary judgment filed by defendant Lange (docket no. 31) and defendants Heebsch, Jenkins and Lacy (docket no. 55).

**I. Background**

Plaintiff's amended complaint alleged that he received inadequate treatment for a hernia and that he had interruptions in his cardiac medication (sometimes referred to as "hypertension medication" or "blood pressure medication"). Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF). He named ten defendants in this action: Prison Health Services (PHS) President and CEO Richard Hallworth; Correctional Medical Services, Inc. (CMS) President and CEO Richard H. Miles; PHS Regional Medical Director Dr. Sylvia McQueen; PHS Dr. Harriet Squire; MDOC Chief Medical Officer Dr. George Pramstaller; CMS Medical Director Dr. Craig Hutchinson; CMS Utilization Manager Dr. Eddie Jenkins; LCF Physician Assistant (P.A.) Hope Heebsch; LCF Health Unit Manager (HUM) Nancy Lange; and LCF Supervising Physician Dr. Robert Lacy.

Plaintiff has set forth the following allegations with respect to his hernia condition. Plaintiff kited the LCF Health Service Department about a hernia in his groin area on November 13, 2008. Amend. Compl. at ¶ 1. Between November 13, 2008 and December 15, 2008, plaintiff was called out by Nurse Hobbs and evaluated by defendant P.A. Heebsch. *Id.* at ¶¶ 2-3. On December 1, 2008, P.A. Heebsch requested surgery to repair plaintiff's hernia within six weeks. *Id.* at ¶ 4. Defendant Dr. Jenkins denied the request on December 2nd. *Id.* at ¶ 4. On December 15th, P.A. Heebsch called out plaintiff and informed him that Dr. Jenkins had rejected the surgery because it did not meet the criteria, and gave plaintiff the option of medication or a hernia belt. *Id.* at ¶ 5. Plaintiff requested both and was given a prescription for Naproxin and told that a hernia belt would be ordered. *Id.* Plaintiff alleged that he grieved the denial of hernia surgery on December 19, 2008, in grievance LCF-2009-01-0014-28e ("14"). *Id*. at ¶ 7.

On February 2, 2009, plaintiff inquired about the hernia belt, which had not yet arrived. *Id.* at ¶ 8. On February 19th, plaintiff was called out to see P.A. Heebsch, who informed him that they were unable to find a hernia belt. *Id.* at ¶ 11. Plaintiff was given the option of an athletic supporter or an abdominal binder. *Id.* Plaintiff chose the abdominal binder and was given one at that time. *Id.* P.A. Heebsch also ordered Motrin for pain because the Naproxin was ineffective. *Id.*

On April 8th, P.A. Kirk submitted a second request for hernia surgery to PHS, which plaintiff identified as "the new network provider for the MDOC." *Id.* at ¶ 12. P.A. Kirk also prescribed meloxicam for pain. *Id.* On April 10th, defendant Dr. McQueen denied the second request for surgery and ordered the medical service provider to continue conservative treatment because the hernia was still reducible. *Id.* at ¶ 13. On June 4th, plaintiff wrote to health services,

2

informing them that his hernia was getting bigger and making it harder to have bowel movements. *Id.* at ¶ 14. On June 8th, Nurse Joy Parrish called plaintiff out and gave him medication to help with the constipation and scheduled him to see the physician assistant. *Id.* He was seen by P.A. Kirk on June 10th. *Id.* at ¶ 16. P.A. Kirk informed plaintiff that MDOC Chief Medical Officer, Dr. Stieve, had e-mailed her that a source had been found for the hernia belt. *Id.* On July 14th, P.A. Kirk advised plaintiff that she was ordering him a hernia belt. *Id.* at ¶ 17. Plaintiff saw P.A. Kirk again on September 4th to request pain medication. *Id.* at ¶ 18. At that time, P.A. Kirk informed plaintiff that his request for a hernia belt had been denied . *Id.* P.A. Kirk also examined plaintiff and found that the hernia had grown to baseball size, causing plaintiff constant pain and impairing his ability to walk. *Id.* Kirk told plaintiff that she was going to submit another request for surgery at PHS and to issue a request for pain medication to the pain medication committee. *Id.* On September 11th, Dr. Squire denied the request for surgery stating that as long as the hernia was reducible, surgery was not indicated. *Id.* at ¶ 19.

Plaintiff's second medical claim arises from health services' alleged failure to refill his cardiac medication until after his supply ran out. Plaintiff alleged that on December 15, 2008, he noticed that he had only a three or four day supply of cardiac medication. *Id.* at ¶ 6. He kited the health services to inform them that his medication was running out and asked for a refill before it ran out. *Id.* After sending "several kites" plaintiff ran out of medication and had none "for several days." *Id.*[1] Plaintiff allegedly filed a grievance with respect to the medication on December 20, 2008, in grievance LCF-2009-01-0044-28e ("44"). *Id.* at ¶ 7. Plaintiff also alleged that he was

---

[1] Plaintiff's medical records establish that he sent a kite requesting a renewal of his blood pressure medicine (Norvasc) on December 19, 2008. MDOC Medical Records at p. 58 (docket no. 59). On December 22nd, plaintiff sent a kite stating that he was out of Norvasc. *Id.* at p. 59. On December 26th, plaintiff was instructed to come to the medlines to get the medication until it was available from Pharmacor. *Id.*

without cardiac medication for three days (February 7, 8 and 9, 2009) and that he filed another grievance on February 9, 2009, in grievance LCF-2009-02-168-28i ("168"). *Id.* at ¶ 10. He received the medication on February 10, 2009. *Id.*

With respect to his first claim, plaintiff alleged that defendants Hallworth, Miles and Dr. Hutchinson failed "to curb the known rule, custom or practice" of Dr. Jenkins in denying plaintiff's hernia surgery. *Id.* at ¶ 22. He alleged that defendants Dr. McQueen, Dr. Jenkins and Dr. Squire were deliberately indifferent to his serious medical needs "in refusing [p]laintiff's surgery request." *Id.* at ¶ 23. In addition, defendant P.A. Heebsch demonstrated deliberate indifference to his serious needs by failing to appeal Dr. Jenkins' the denial of surgery. *Id.* at ¶ 24. Finally, plaintiff alleged that defendants Dr. Pramstaller's and Dr. Lacy's failure to authorize surgery to repair his hernia constituted deliberate indifference. With respect to his second claim, plaintiff alleged that defendant HUM Lange was deliberately indifferent in failing "to follow a protocol in the delivery of [plaintiff's] hypertension medication." *Id.* at ¶ 26. Plaintiff seeks declaratory relief, injunctive relief, compensatory damages and punitive damages.

After screening the amended complaint, the court dismissed plaintiff's action against defendants Hallworth, Miles, Dr. Pramstaller and Dr. Hutchinson without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). *See* Order for Partial Service (docket no. 9). This matter is now before the court on motions for summary judgment filed by defendants HUM Lange, P.A. Heebsch, Dr. Jenkins and Dr. Lacy. *See* docket nos. 31 and 55.[2]

---

[2] The court notes that the remaining defendants, Dr. McQueen and Dr. Squire, have responded to plaintiff's amended complaint by filing an answer. *See* docket no. 41.

4

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. Failure to exhaust

### A. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v.*

5

*Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

### B. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a

timely response, he must send a completed Step III grievance, using the appropriate form, to the appropriate MDOC official.

## C. Plaintiff's grievances pursued through Step III

The record reflects that plaintiff appealed grievances 14, 44 and 168 through Step III. *See* Grievances 14, 44 and 168; MDOC Step III Grievances by Prisoner (docket no. 32-6).

### 1. Grievance no. 14

Grievance no. 14 complained about the inadequate treatment for plaintiff's hernia, including his need for surgery, naming five individuals: former defendants Dr. Pramstaller and Dr. Hutchinson; Dr. Jenkins; P.A. Heebsch; and HUM Lange. *Id. See* Grievance no. 14. This grievance is dated December 19, 2008, and lists the "Date of Incident" as December 15, 2008. *Id.* The grievance was rejected as untimely, having been received by the MDOC on January 6, 2009. *Id.* Plaintiff did not present any reason for the delay in filing the grievance. *Id. See* PD 03.02.130 ¶ I ("[a] grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy"). Rather, in his Step II appeal, plaintiff characterized the rejection of his grievance as one of "a technicality of timeliness." *See* Grievance no. 14. In his Step III appeal, plaintiff did not address timeliness but advised the MDOC that "[f]or personal injury, I am afforded three years to bring a claim." *Id.*

Although plaintiff did not contest the issue of timeliness during the grievance procedure, he now contends that the grievance was timely because he "sent it" on December 19, 2008. *See* PD 03.02.130 ¶ S ("Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant"). However, plaintiff has presented no evidence, by affidavit or documentation, to establish that he "sent" the grievance on December 19th. MDOC records

7

reflect that the grievance was not received until January 6, 2009. *See* Grievance no. 14. Furthermore, after the grievance was rejected as untimely, plaintiff did not contest the rejection on the basis that he sent the grievance on December 19th (as alleged now), but rather complained about the "technicality of timeliness."

Under these circumstances, plaintiff has failed to properly exhaust this grievance in accordance with the deadlines and other applicable procedural rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants Dr. Jenkins, P.A. Heebsch, and HUM Lange are entitled to summary judgment with respect to plaintiff's claims in Grievance no. 14 arising from the alleged inadequate care for his hernia.

**2.     Grievance no. 44**

Grievance no. 44 bears an incident date of December 15, 2008. Grievance no. 44 grieved the failure of Dr. Lacy and HUM Lange to adequately provide him with medication for his high blood pressure, seeking "more than $10,000 each" from them. *See* Grievance no. 44. Plaintiff stated that when he spoke with P.A. Heebsch about this matter on December 15th, she could not provide an explanation for the omission in ordering the high blood pressure medicine. *Id.* While plaintiff attempted to resolve this grievance with P.A. Heebsch, this grievance appears directed at Dr. Lacy and HUM Lange, the two individuals from whom plaintiff sought money. *Id.*

This grievance is dated December 20, 2008, and lists the "Date of Incident" as December 15, 2008 (i.e., the date when plaintiff spoke with P.A. Heebsch). *Id.* The grievance was rejected as untimely, having been received by the MDOC on January 13, 2009. *Id.* Plaintiff did not appeal the rejection on this ground or present any reason for the delay in filing the grievance. *Id. See also*, PD 03.02.130 ¶ I. Rather plaintiff stated in his Step II appeal that the grievance

8

coordinator's authority to dismiss the grievance "will not cure the high blood pressure" and that the "wrong doing [of the health care providers] should not be made my mistake." *See* Grievance no. 44.

Although plaintiff did not contest the issue of timeliness during the grievance procedure, he now contends that the grievance was timely because he "sent it" on December 20, 2008. *See* PD 03.02.130 ¶ S. However, plaintiff has presented no evidence, by affidavit or documentation, to establish that he "sent" the grievance on December 20th. MDOC records reflect that the grievance was not received until January 13, 2009. *See* Grievance no. 44. Furthermore, as with Grievance no. 14, after the grievance was rejected as untimely, plaintiff did not contest the rejection on the basis that he sent the grievance on December 20th (as alleged now), but rather argued that the grievance coordinator's authority to dismiss the grievance would not cure his blood pressure.

Under these circumstances, plaintiff has failed to properly exhaust this grievance in accordance with the deadlines and other applicable procedural rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Defendants Dr. Lacy. P.A. Heebsch, and HUM Lange are entitled to summary judgment with respect to plaintiff's claims raised in Grievance no. 44 (arising from the alleged failure to provide him with the cardiac medication).

### 3. Grievance no. 168

Grievance no. 168 involves the failure of medical personnel, specifically Dr. Lacy and HUM Lange, "to have a system in place that monitors and informs them that my blood pressure medication will expire within a specific amount of days, necessitating renewal." *See* Grievance no. 168. This grievance is dated February 9, 2009, and lists the "Date of Incident" as February 6, 2009.

9

*Id.* The grievance was rejected because plaintiff failed to attempt to resolve his complaint prior to filing a grievance. *Id.*; *See* PD 03.02.130 ¶ P ("Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration . . . The Step I grievance must be filed within five days after the grievant attempted to resolve the issue with appropriate staff"). In his step II appeal, plaintiff stated that the initial response was "unfounded" and that he had been trying to resolve this issue for two months. *Id.* Plaintiff also provided a similar response as that made in grievance no. 44, stating that the grievance coordinator's authority to dismiss the grievance "will not cure the high blood pressure" and that the "wrong doing [of the health care providers] should not be made my mistake." *Id.*

Plaintiff has presented no evidence, by affidavit or documentation, that he attempted to resolve the issue with staff two business days after becoming aware of the grievable issue and filed the Step I grievance within five days after he attempted to resolve the issue. *See* PD 03.02.130 ¶ P. In this regard, the court notes that the grievance contains an internal inconsistency. While plaintiff lists an incident date of February 6, 2009, he states that he tried to resolve the grievance on February 3, 2009, three days before the alleged grievable incident occurred. *See* Grievance no. 168.[3]

Plaintiff has failed to properly exhaust this grievance in accordance with the deadlines and other applicable procedural rules. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S.

---

[3] The court further notes that there appeared to be no grievable issue on both February 3rd and 6th. Based upon the allegations in his amended complaint, plaintiff had cardiac medication on both dates. *See* Amend. Compl. at ¶ 10.

10

at 90-91. Accordingly, defendants Dr. Lacy and HUM Lange are entitled to summary judgment with respect to claims set forth in Grievance no. 168.

### D. Dr. Lacy

As an initial matter, plaintiff does not allege when Dr. Lacy allegedly failed to authorize hernia surgery. A review of plaintiff's medical records reflect that Dr. Lacy looked at his hernia on or about October 8, 2009. *See* MDOC Medical Records at p. 127 (docket no. 59). At that time, P.A. Kirk noted that Dr. Lacy concurred that repair of plaintiff's hernia "could prevent further enlargement, reduced discomfort and ability to continue health lifestyle that includes exercise," and that "pt has a lifetime sentence so quality of life is of concern here." *Id.* The treatment plan included obtaining a picture of the hernia and proceeding with an MSAC appeal. *Id.* There is no evidence that plaintiff exhausted a grievance against Dr. Lacy regarding the hernia surgery. Dr. Lacy's interaction with plaintiff occurred months *after* plaintiff filed the three grievances listed above. While Dr. Lacy is named in grievances 44 and 168 with respect to providing plaintiff with cardiac medication, he is not named in grievance no. 14, the only grievance related to the hernia surgery. Even if Dr. Lacy had been named in grievance no 14, that grievance was unexhausted, for the reasons discussed previously.

Under these circumstances, plaintiff has failed to properly exhaust a grievance against Dr. Lacy with respect to his hernia treatment. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, Dr. Lacy is entitled to summary judgment.

## V. Recommendation

For the reasons set forth above, I respectfully recommend that motions for summary judgment filed by HUM Lange (docket no. 31) and P.A. Heebsch, Dr. Jenkins and Dr. Lacy (docket no. 55) be **GRANTED** and that they be dismissed from this action.


Dated: January 24, 2011                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).